FILED

2006 Feb-01  PM 01:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DAVID BANKS,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **VS.** | ) | **2:05-cv-0530-JHH** |
| | ) | |
| **BUFFALO ROCK COMPANY,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## MEMORANDUM OF DECISION

The court has before it the November 30, 2005 motion (doc. #20) of

defendant Buffalo Rock Company ("Buffalo Rock") for summary judgment.

Pursuant to the court's December 1, 2005 order (doc. #21), the motion was

deemed submitted, without oral argument, on January 5, 2006.

### I. Procedural History

Plaintiff David Banks commenced this action on March 14, 2005 by filing a

complaint in this court alleging that his former employer, defendant Buffalo Rock,

wrongfully terminated him in violation of the Family Medical Leave Act

("FMLA"), 29 U.S.C. § 2601, et seq.  (See Compl.)  Defendant's November 30,

2005 motion for summary judgment asserts that there is no genuine issue of

material fact and that defendant is entitled to judgment as a matter of law.  (See

generally Def.'s Mem. Supp. Summ. J.)

On November 30, 2005, defendant filed evidence[1] and a memorandum of law (doc. #20) in support of its motion. Plaintiff has not opposed defendant's motion by submitting a brief or evidence. Thus, the court has the pleadings, the motion, and defendant's brief and evidence in support of the motion.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that the moving party believes demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477

---

[1] Defendants submitted the following evidence: the deposition of David Banks; Buffalo Rock's policy on being late or absent, signed by Banks; the Buffalo Rock Company Employee-Partner Guide; the Buffalo Rock Company Employee Guide; Employee Disciplinary Action Forms for David Banks; a return to work slip for David Banks issued by Dr. Pasquale Delvecchio dated July 29, 2004; Buffalo Rock Employee Performance Reviews for David Banks; a Termination Report for David Banks dated Aug. 5, 2004; Buffalo Rock's Personal Harassment Policy, signed by David Banks; the declaration of Tony Pope; the declaration of Bobby Barnes; and the declaration of Bobby Lindsey.

U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the

nonmoving party to go beyond the pleadings and by her own affidavits, or by the

depositions, answers to interrogatories, and admissions of file, designate specific

facts showing that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are

irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Chapman,

229 F.3d at 1023.  All reasonable doubts about the facts and all justifiable

inferences are resolved in favor of the nonmovant.  Chapman, 229 F.3d at 1023;

Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is

genuine "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If

the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted.  Anderson, 477 U.S. at 249-50.  The method used by the

party moving for summary judgment to discharge its initial burden depends on

whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2

F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d

1428 (11th Cir. 1991) (en banc)).  If the moving party bears the burden of proof at

trial, then it can only meet its initial burden on summary judgment by coming

forward with positive evidence demonstrating the absence of a genuine issue of

material fact (i.e. facts that would entitle it to a directed verdict if not controverted at trial).  Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case.  Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may

either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts.  Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[2]

Plaintiff David Banks was hired by Buffalo Rock's Birmingham division on July 22, 1997 by human resources coordinator Bobby Lindsey.  (Banks Dep. at 33.)  Initially, plaintiff worked for Buffalo Rock as a general laborer.  (Id. at 35.) After working for Buffalo Rock for approximately one year, plaintiff became a depalletizer operator.  (Id. at 37-38.)  A depalletizer is a machine that sends empty soda bottles to another machine where they are filled with Pepsi and/or Buffalo Rock products.  (See id. at 38.)  During his time as a depalletizer operator, plaintiff's superintendents were Tony Pope and Bobby Barnes.  (Id. at 39.) Plaintiff remained in his position as a depalletizer operator until his termination on

---

[2]If the facts are in dispute, they are stated in the manner most favorable to the nonmoving party.  See Fitzpatrick, 2 F.3d at 1115.  The court notes, however, that allegations in a pleading that are not admitted by an opposing party or supported by evidence cannot be viewed as factual.

August 5, 2004.  (See id.)

On or about July 30, 2004, plaintiff visited his family physician, Dr. Pasquale Delvecchio, because he had experienced tightness in his chest two days earlier.  (Id. at 11-12.)  Plaintiff was no longer experiencing the tightness in his chest on the day of his doctor's appointment.  (Id. at 12.)  Dr. Delvecchio told plaintiff that he "didn't like the way [his] heart sounded" and made plaintiff an appointment with a cardiologist, Dr. Wilensky.  (Id. at 13.)  Plaintiff saw Dr. Wilensky on Monday, August 2, 2004.  (See id. at 17.)  Plaintiff experienced no physical symptoms between his appointment with Dr. Delvecchio and his appointment with Dr. Wilensky.  (Id.)  Dr. Wilensky ran some tests on plaintiff and determined that "he didn't like something."  (Id.)  Dr. Wilensky scheduled plaintiff for an arteriogram on August 13, 2004.  (Id. at 19.)  The arteriogram revealed that one of plaintiff's arteries was approximately 30 percent blocked.  (Id. at 24.)  Dr. Wilensky prescribed a cholesterol medication, Crestor, for plaintiff. (Id.)  Plaintiff is still taking the medication.  (Id. at 25.)

In addition to examining plaintiff's heart during his doctor's visit, Dr. Delvecchio also performed a complete physical on plaintiff and recommended that plaintiff have a colonoscopy because he saw blood during his prostate exam. (Banks Dep. at 14-15.)  Based on Dr. Delvecchio's recommendation, plaintiff saw

Dr. Helms, a gastroenterologist, for a colonoscopy on August 3, 2004.  (Id. at 20.)
The results of the colonoscopy were normal.  (Id. at 21.)

Plaintiff was scheduled to work the night shift at Buffalo Rock on July 31,
August 1, and August 2, 2004, which required that he report to work at 7 p.m. on
those dates.  (Id. at 46-47, 66-67.)  Plaintiff called the Buffalo Rock production
office from his home phone between 4 p.m. and 6 p.m. on July 31, but no one
answered the phone.  (Id. at 61-62.)  Plaintiff left a message stating that "the
doctor had [him] off until the 5th of August."  (Id.)  A return to work slip signed
by Dr. Delvecchio supports plaintiff's claim that he was not to return to work until
August 5th, although the note contains no particulars regarding plaintiff's
condition or treatment.  (See Banks Dep. Ex. 5.)  Plaintiff's understanding of
Buffalo Rock's policy regarding calling in sick to work was that employees needed
to call at least one hour before they were scheduled to work if they were going to
be absent for their shift and that leaving a message was acceptable.  (Banks Dep.
at 68, 78-80.)

When plaintiff began working at Buffalo Rock, he received a written copy
of the company's policy on absenteeism and tardiness, which outlines the
procedures an employee should follow when reporting that he will be absent or
late.  (Id. at 73, Ex. 1, Ex. 2, Ex. 3.)  On the day he was hired, plaintiff

acknowledged receipt of this policy by signing it.  (Id. Ex. 1.)  The policy provides

in pertinent part:

> Anytime you call in to be absent or late, you personally must call in
> and talk to a superintendent.  This will need to be done before the
> start of your shift and at least 1 hour before the start of your shift.
> You must also call in each and every day that you are off.

> Wives, relatives or friends may not call in for you under any
> circumstances unless you are totally disabled.  Remember:  You have
> not reported off until you have talked to a superintendent yourself.

> If you call and get no answer or a busy signal, call back again and
> keep trying until you get through.  It is your responsibility to report
> off or for being late.  If you do not call in to report off and your
> supervisor has not heard from you in three days, it will be considered
> that you have abandoned your job.

(Id.)

Defendant claims that plaintiff did not comply with this policy because (1) he did

not continue calling until he reached a supervisor but instead left a message and

(2) he did not call in each day he was off.  Plaintiff, though, stated that he left a

message instead of repeatedly calling back because during his seven-year tenure at

Buffalo Rock, he and the other employees routinely left messages to inform their

supervisors that they were going to be absent.  (Banks Dep. at 53, 78-80.)  Plaintiff

did admit that he only called in the first day he was off, but he stated that he had

been told by one of his superintendent's supervisors that employees only needed to

call in once if they knew they were going to be out several days in a row.  (Id. at

74-75.)  According to defendant, plaintiff was terminated because his supervisors did not hear from him for three days, meaning that he abandoned his job pursuant to the company's attendance policy.  (Lindsey Decl. ¶ 6.)

When plaintiff reported to work at 7 p.m. on August 5, 2004, one of his superintendents, Tony Pope, told him that he could not work and that instead he should report to the break room and wait for further instructions.  (<u>Id.</u> at 48-49.) After plaintiff waited in the break room for approximately one hour, Pope called him to the production office and told him that Pope's supervisor had informed him that plaintiff could not work his scheduled shift that night because he had not called in for his previously scheduled shifts.  (<u>Id.</u> at 49-50, 52.)  Plaintiff told Pope that he did call in, and he gave Pope his excuse from Dr. Delvecchio.  (<u>Id.</u> at 48, 52.)  Pope then instructed plaintiff to call human resources coordinator Bobby Lindsey the next morning at 8 a.m.  (<u>Id.</u> at 48.)  Plaintiff testified that an assistant named Don, whose last name he did not know, and another supervisor, who he believed was James Bryant, were also present in the production office during the conversation but did not say anything.  (<u>Id.</u> at 50-51.)

On August 6, 2004 at 8 a.m., plaintiff called Lindsey and informed him that he had called in even though his supervisors said he had not.  (<u>Id.</u> at 53.)  He told Lindsey that he had worked at Buffalo Rock for seven years and knew that he

9

needed to call in when he could not make a shift.  (Id.)  He further told Lindsey that on this occasion, he talked to an answering machine like he always did when he called in, but this time his supervisors said they did not receive the message. (Id.)  Lindsey informed plaintiff that they were going to have a meeting about his situation and that he would get back in touch with plaintiff to tell him what had been decided.  (Id. at 53-54.)  Between 11 a.m. and noon that day, Lindsey called plaintiff back and informed him that he had met with the plant manager and some other Buffalo Rock officials and that they had decided to terminate plaintiff because he had not called in before missing his shifts.  (Id. at 44, 54.)  Although other management officials attended this meeting, Lindsey was the sole decision maker in plaintiff's termination.  (Lindsey Decl. ¶ 6.)

Plaintiff's superintendents, Barnes and Pope, both declared under oath that they did not receive plaintiff's telephone message, and plaintiff testified that he does not know whether they received it.  (Barnes Decl. ¶ 3; Pope Decl. ¶ 3; Banks Dep. at 84.)  Barnes and Pope also declared that they never received plaintiff's excuse from Dr. Delvecchio and that they were not made aware that plaintiff was absent for medical reasons.  (Barnes Decl. ¶¶ 3-4; Pope Decl. ¶¶ 3-4.)  Plaintiff testified that he did not have any conversations with any supervisors or managers at Buffalo Rock about the reasons for his absences, and he never formally

10

requested a leave of absence.  (Banks Dep. at 96, 130.)

During his seven-year tenure at Buffalo Rock, plaintiff was disciplined nine (9) times, with either a verbal or written warning, for being absent without a doctor's excuse.[3]  (Id. Ex. 4.)  He was also disciplined three times for his tardiness.[4]  (Id.)  On what defendant purports to be his two most recent performance evaluations, plaintiff received a "needs improvement" on attendance and punctuality but either met or exceeded expectations in every other area and was described in each evaluation as a "good employee" or "good worker."  (Id. Ex. 6, Ex. 7.)

## IV. Applicable Substantive Law and Analysis

Plaintiff's complaint alleges that he was terminated in retaliation for taking medical leave pursuant to the Family Medical Leave Act ("FMLA").  Defendant's motion for summary judgment, as amplified in its memorandum in support thereof, asserts that (1) plaintiff cannot establish a prima face case of FMLA retaliation

---

[3] According to his Employee Disciplinary Action Forms, plaintiff was given the following warnings for being absent without a doctor's excuse:  an oral warning on May 3, 1999; an oral warning on Feb. 28, 2000; an oral warning on March 5, 2001; a written warning on Sept. 5, 2001; an oral warning on Aug. 9, 2002; an oral warning on March 6, 2003; a written warning on Nov. 12, 2003; an oral warning on Jan. 28, 2004; and a written warning on June 9, 2004. (Banks Dep. Ex. 4.)

[4] According to his Employee Disciplinary Action Forms, plaintiff was given the following warnings for his tardiness:  an oral warning dated April 2, 2002 for being late three times; a written warning dated Sept. 23, 2002 for being late once; and an oral warning dated Oct. 21, 2003 for being late three times.  (Banks Dep. Ex. 4.)

and (2) even if plaintiff could establish a prima facie case, he cannot show that defendant's legitimate, non-retaliatory reasons for terminating him were pretextual. (See generally Def.'s Mem. Supp. Summ. J.)

The FMLA makes it "unlawful for an employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).  To succeed on an FMLA retaliation claim, "an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." Strickland v. Water Works and Sewer Bd. of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001).  In the absence of direct evidence of the employer's intent, the Eleventh Circuit applies the burden-shifting framework the Supreme Court articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) in FMLA retaliation cases.  Id.; Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 798 (11th Cir. 2000).  Under that framework, the plaintiff must first establish a prima facie case of retaliation.  Smith v. BellSouth Telecomm., Inc., 273 F.3d 1303, 1314 (11th Cir. 2001).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse action it took against the plaintiff.  Id.  If the defendant is able to articulate such a reason, the burden shifts back to the plaintiff

12

to prove that the articulated reason is a pretext for retaliation.  Id.

### A.  Plaintiff's Prima Facie Case

To establish a prima facie case of FMLA retaliation, a plaintiff must show that (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action.  Brungart, 231 F.3d at 798. Defendant has conceded that plaintiff has established the first two elements of his prima facie case:  (1) his absenteeism was statutorily protected and (2) his termination was an adverse employment action.  Defendant disputes, however, the third element of plaintiff's prima facie case:  whether there is a causal connection between the statutorily protected conduct and plaintiff's termination.

To establish the third element of the prima facie case, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." Brungart, 231 F.3d at 799.  In order to do this, a plaintiff must generally show that the employer's decision maker had notice of the protected conduct at the time of the adverse action.  Id.  The Eleventh Circuit has noted that this requirement is based on common sense:  "A decision maker cannot have been motivated to retaliate by something unknown to him."  Id.  Whether an employer had notice of the protected conduct may be established by circumstantial evidence.  Id.

13

However, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." Id. Evidence of temporal proximity can be used, however, to bolster other evidence that the defendant had notice. Strickland, 239 F.3d at 1208 n.10.

In the instant case, plaintiff has not established the third element of his prima facie case because he cannot establish that anyone at Buffalo Rock, and particularly Lindsey, the decision maker, had notice that he was taking FMLA leave. Both of plaintiff's direct supervisors, Pope and Barnes, as well as the decision maker, Lindsey, stated in their declarations that they did not receive a message from plaintiff that he was missing work for medical reasons. Plaintiff offers no evidence to the contrary. He testified that he did not know whether anyone at Buffalo Rock had received his message. Further, while plaintiff testified that he had called in before by leaving a message, he offered no specific evidence that anyone received the message he left on July 31. The only evidence of a causal connection plaintiff can offer is the close proximity between his protected medical leave and his termination: He missed work on July 31, August 2, and August 3, and he was terminated only three days after missing his last shift, on August 6. As the Eleventh Circuit has explicitly noted, though, plaintiff's

14

evidence of temporal proximity is not, by itself, enough to establish the third

element of the prima facie case, particularly in light of the fact that there is

unrebutted evidence in this case (the declarations of Lindsey, Pope, and Barnes)

that the decision maker did not have notice of the medical leave.  Therefore,

plaintiff has failed to establish a prima facie case on his FMLA retaliation claim.

*B.  Defendant's Articulated Reason and Plaintiff's Rebuttal*

Assuming, *arguendo*, that plaintiff could establish a prima facie case, the

burden shifts to the employer to articulate a legitimate, non-retaliatory reason for

the adverse employment action.  <u>Wascura v. City of South Miami</u>, 257 F.3d 1238,

1242 (11th Cir. 2001).  The employer's burden at this stage is exceedingly light

and is "merely one of production; it need not persuade the court that it was

actually motivated by the proferred reasons.  It is sufficient if the defendant's

evidence raises a genuine issue of fact as to whether it discriminated against the

plaintiff."  <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1024 (11th Cir. 2000)

(internal citations and quotations omitted).  Defendant's articulated reason for

terminating plaintiff in this case is that he violated Buffalo Rock's "no call/no

show" attendance policy by leaving a message instead of speaking with a

supervisor and by not calling in each day he needed to be off work.  Buffalo Rock

has met its burden of production in this case.  A violation of a company attendance

policy is certainly a legitimate, non-discriminatory reason to fire an employee.
See, e.g., Smith, 273 F.3d at 1314 (recognizing attendance unrelated to FMLA
leave as a legitimate, non-discriminatory reason); Armindo v. Padlocker, Inc., 209
F.3d 1319, 1322 (11th Cir. 2000) (finding that a poor attendance record was a
legitimate, non-discriminatory reason for termination).

Because defendant has articulated a legitimate, non-retaliatory reason for
terminating plaintiff, the burden shifts back to plaintiff to show that the articulated
reason is a pretextual.  See Wascura, 257 F.3d at 1243.  To show pretext in cases
such as this one, where the plaintiff was discharged for violating a "work rule" or
company policy, the plaintiff "must show either that he did not violate the work
rule or that, if he did, other employees not within the protected class who engaged
in similar acts were not similarly treated." Anderson v. Savage Labs., Inc., 675
F.2d 1221, 1224 (11th Cir. 1982); see also Nix v. WLCY Radio/Rahall Comm.,
734 F.2d 1181, 1186 (11th Cir. 1984).

The plaintiff has not meet this burden in the instant case.  He has admitted
that he called in and just left a message instead of calling back several times to try
to speak with a supervisor.  Further, he has admitted that the call during which he
left a message was the only call he made.  He did not call each day that he was
going to miss his shift.  His behavior clearly violated the terms of Buffalo Rock's

16

official, written absenteeism policy.  Thus, plaintiff cannot show that he did not

violate the work rule at issue in this case.  The plaintiff also cannot show that

other employees who violated the absenteeism policy were not treated similarly.

Plaintiff could only name one other employee, Derrick Holloway, another

depalletizer operator, who had called in by leaving messages, and plaintiff did not

know the specific circumstances surrounding Holloway's absences or his calling

in.  (Banks Dep. at 80-81.)  In addition, although plaintiff claimed that he knew

other people who had called in by phone, he could not recall any other names or

any particulars regarding those employees and their absences.  Plaintiff also did

not know of anyone who had violated the no call/no show policy and not been

terminated.  (See id. at 83.)  Plaintiff has thus failed to identify similarly situated

comparators who were treated differently.  Therefore, he cannot show that his

termination for violation of a work rule was a pretext for retaliation for his FMLA

leave.  Accordingly, the court finds that no material issues of fact remain and that

defendant Buffalo Rock is entitled to judgment as a matter of law as to all claims

asserted by plaintiff.  A separate order will be entered.

  **DONE** this the   1st   day of February, 2006.

           _James H. Hancock_

       SENIOR UNITED STATES DISTRICT JUDGE